BENEDICT, Respondent, v. CARTER STATE BANK OF CARTER, Appellant.

(222 N. W. 500.)

(File No. 6001.   Opinion filed December 20, 1928.)

*Geo. A. Buffington* and *E. O. Patterson,* both of Dallas, for Appellant.

*P. A. Hosford,* of Winner, for Respondent.

CAMPBELL, J. Plaintiff brought this action to recover the amount claimed to be due on three certificates of deposit issued to his order by the defendant bank, each in the principal sum of $2,000, payable in six months, with interest at 5 per cent, the first certificate dated October 30, 1923, the second dated December 15, 1923, and the third dated January 15, 1924. There is no dispute between the parties but that plaintiff in fact delivered to defendant bank the sum of $2,000 on each of those occasions.

It seems further undisputed that on or about October 23, 1923, a certain contract was entered into between one H. Benedict, of Chicago, Ill. (a brother of plaintiff), as first party, and E. V. Youngquist, the cashier of the defendant bank, as second party, by the terms of which the first party delivered to the second party 221 head of cattle, and the second party agreed to care for the cattle and feed them hay and corn from date until April 23, 1924, his compensation to be 9 cents per pound for all gain in weight of the cattle, which contract was subsequently modified in writing to provide that the cattle should be fed to July 3, 1924, and that the compensation should be 10 cents per pound for gain in weight. This contract was made at Carter, S. D., on the day of its date.

H. Benedict, the plaintiffs brother, was not in South Dakota at that time, but all negotiations in his behalf were conducted by the plaintiff, C. R. Benedict, who signed the name, H. Benedict, to the contract in question. It seems to be admitted also that Youngquist entered into the contract upon his part for the benefit of defendant bank and later assigned the contract to the bank.

It seems also to be undisputed that there was at the time of the execution of such contract some sort of an understanding between the parties thereto that H. Benedict was to advance money from time to time to the second party named in said feeding contract in order to enable said second party to buy feed and comply with the feeding contract, such advances to be deducted from the amount due to said second party at the termination of the feeding contract. The amount so to be advanced appears not to have been determined upon. It is also admitted that plaintiff, C. R. Benedict, as agent of and for and in behalf of his brother, H. Benedict, the first party in said feeding contract, delivered to Youngquist on three different occasions during the life of said feeding contract the respective sums of $1,000, $500, and $2,000 of H. Benedict's money, which sums were represented by three promissory notes, each signed by E. V. Youngquist, and payable to the order of H. Benedict, with reference to which notes Youngquist testified: "Those are some of the notes that were to be used in the settlement of the feeding contract. They have not been paid except insofar as the feeding contract is concerned. The money was sent to me by C. R. Benedict for his brother."

As to the certificates of deposit here involved, it is the claim of defendant bank that these certificates also represented money belonging to H. Benedict furnished by C. R. Benedict to buy feed and thus promote the performance of the feeding contract, and that said certificates were never to be paid in money according to their tenor, but were to be deducted from the amounts due to the defendant bank or to Youngquist for and in behalf of the defendant bank at the completion and settlement of the feeding contract, and, when plaintiff brought this action to collect upon the certificates of deposit according to their tenor, the defendant bank pleaded as to each of said certificates that the amount thereof had been paid by being applied upon the indebtedness due from H. Benedict to defendant under the feeding contract, amounting to $9,447.90 on July 3, 1924.

The plaintiff, upon his part, does not question but that he negotiated the feeding contract in behalf of his brother, H. Benedict, and does not question but that he agreed in behalf of said H. Benedict that said H. Benedict would advance money from time to time upon said feeding contract, and admits that the amounts of $1,000, $500, and $2,000 evidenced by the promissory notes above mentioned, signed by Youngquist, payable to H. Benedict, comprised money belonging to H. Benedict which plaintiff furnished to defendant bank pursuant to such agreement, and that said notes were not to be paid in cash according to their tenor, but were to be offset at the completion of the feeding contract. But with reference to the certificates of deposit in question it is the contention of plaintiff that they had no connection whatever with the H. Benedict feeding contract and that they represented his own personal funds deposited in the defendant bank in the usual manner and to be repaid with interest according to their tenor, plaintiff's position as to said certificates being set out in his own testimony substantially as follows:

"There was no agreement between Mr. Youngquist and myself in regard to any deposit that I might make in the bank. After we agreed on the terms of the feeding contract I agreed to furnish him some of H. Benedict's money. He wanted to know if I could not deposit some money in his bank as the bank was hard up and if I did not have some money of my own that I could deposit in his bank. I had some money and I decided to do it and I told him I would do it. There was nothing said about using that money in connection with the feeding contract.

"I am working for my brother in his cattle financing operations. I have no interest in these operations personally and never have had. My brother was to advance some money to Mr. Youngquist personally. The money he advanced is represented by Exhibits 'D,' 'E,' and 'F.' These funds that he advanced separately to Mr. Youngquist were witnessed by promissory notes and for the funds that I deposited in the Carter State Bank of my own personal funds, the bank issued certificates of deposit to me."

It clearly appears that the substantial dispute between the parties goes to the proposition of whether or not the certificates of deposit were connected up with the cattle feeding contract of H. Benedict, plaintiff's brother.

The case was tried to the court with a jury, and the jury returned a general verdict in favor of plaintiff on all the issues. In addition, three special interrogatories were submitted to and answered by the jury.

Interrogatory No. 1 is as follows: "Did plaintiff when he took the three $2,000.00 certificates, Exhibits 'A,' 'B' and 'C' have an agreement with E. V. Youngquist that the certificates were to be surrendered and the amount due thereon to be applied on money due for feeding the cattle under the feeding contracts in evidence between H. Benedict and. E. V. Youngquist?"

To this the jury answered: "No."

Interrogatory No. 2 was as follows: "Did the Carter State Bank furnish expense money for feeding the cattle under the contracts mentioned in Interrogatory No. 1 and did it furnish it believing that the certificates of deposit were to be surrendered to the bank and that the amount due plaintiff should be applied on the feeding contracts referred to in Interrogatory No. 1?"

To this the jury answered: "Yes."

Interrogatory No. 3 was as follows: "Has there been sufficient money advanced by plaintiff C. R. Benedict or H. Benedict or any one for them, exclusive of the certificates of deposit, to fully pay the amount due on the feeding contracts referred to in the foregoing interrogatories?"

And to this interrogatory the jury answered: "No."

Judgment in favor of the plaintiff for the full amount due upon the certificates was entered pursuant to the general verdict of the jury, and from this judgment and from an order denying its motion for a new trial defendant bank has appealed.

Appellant assigns error in support of two main propositions: First, that the evidence is insufficient to support the general verdict and the judgment entered thereon; and, second, that such general verdict of the jury should not stand for the reason that it cannot be reconciled with the answers returned by the jury to the second and third special interrogatories.

With reference to the matter of the sufficiency of the evidence, we believe no useful purpose would be served by endeavoring to set the same out in any considerable detail in this opinion. The testimony of the respondent and of the witness Youngquist, cashier of appellant bank, both interested witnesses, is squarely in

conflict with reference to the vital facts in the case. As to the other evidence, the logical inferences seem to point in varying directions, sometimes to the corroboration of Youngquist, sometimes to the corroboration of respondent. It is peculiarly a question for the jury. It must be borne in mind that the real burden of proof in this case was upon the appellant to establish its affirmative defense —that is, to prove by a preponderance of the evidence the existence of some fact situation, whether in the nature of binding agreement, estoppel, or otherwise, which would justify the appellant in refusing to pay said certificates to respondent according to their tenor and in applying the proceeds thereof to indebtedness due from H. Benedict to appellant under the feeding contract. The jury by its general verdict has said that appellant did not sustain this burden and did not succeed in convincing the minds of the jurors of the existence of the facts essential to establish such affirmative defense. Certainly this court cannot say, in view of the square conflict of the testimony, that this general verdict of the jury was unreasonable upon the facts, nor can we substitute our own opinion upon conflicting testimony for that of the jury.

As to appellant's contention upon the point of inconsistency between the general verdict and the answers to the special interrogatories, it may be profitable first to consider somewhat the law applicable to such situations.

Section 2520, R. C. 1919, provides for the submission of particular questions of fact, and the last clause of such section is as follows:

"Where a special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

This provision of the statute came into our law as section 215 of the Civil Procedure Act of 1867-68, and has since remained unchanged. We took it from New York, where it appears first as section 217 of the first report of the Code of Procedure by the Field Commission in 1848, and was subsequently duly enacted (section 262, Wait's N. Y. Ann. Code, 1876). The same provision was enacted in California as section 625, Code Civil Procedure 1872, and has since continued there without change (Kerr's Cyc. Code Cal. C. C. P. § 625). The same provision is found in Indiana (Burns' Ann. Ind. Stat. 1926, § 599). And the same or substan-

tially similar statutes are found in Michigan, Iowa, Wisconsin, Nebraska, Kansas, Illinois, Minnesota, and many other states.

The courts seem uniformly to hold that the inconsistency which will permit a special finding to control a general verdict must be extremely clear and manifest, and that the party submitting a special question of fact is bound by the form thereof, and that the special finding will not be aided or added to by any presumptions or intendments, but, on the contrary, if at all possible, it will be interpreted to support the general verdict rather than to overturn it, and will not control the general verdict unless it is irreconcilably antagonistic thereto upon a vital issue. The general rule is laid down in 27 R. C. L. p. 880, in the following language:

" * * * It is only when the antagonism between the special findings and the general verdict on material questions is of such a nature as to be beyond the possibility of reconciliation under any supposable state of facts provable under the issues that the special findings control. Accordingly in the absence of evidence, and especially where only a part of the facts is embraced in special findings of the jury, the special findings, so far as they will admit of it, will be given an interpretation consistent with the general verdict, and the general verdict will be deemed to be sufficiently supported by the evidence, and to include every element necessary to its validity not negatived by the special findings."

See, also, Thompson on Trials (2d Ed. Early) §§ 2691-2693, XXIII Standard Cyc. Pro. p. 996; Case note 6 L. R. A. 573; Case note 24 L. R. A. (N. S.) 1, particularly at page 67; Antonian v. Southern Pacific Co. (1909), 9 Cal. App. 718, 100 P. 877.

In Louisville, etc., Ry. Co. v. Creek (1891), 130 Ind. 139, 29 N. E. 481, 14 L. R. A. 733, the court said (omitting citations):

"A motion for a judgment on special findings notwithstanding the general verdict should only be sustained when the special findings and the general verdict cannot be reconciled with each other under any supposable state of facts provable under the issues. * * * The court will not presume anything in aid of the special findings, but will make every reasonable presumption in favor of the general verdict."

In C. & N. W. Ry. Co. v. Dunleavy (1889), 129 Ill. 132, 22 N. E. 15, the court said:

"In determining whether the special findings are inconsistent with the general verdict so that the latter must be held to be controlled by the former, this court can not look at the evidence. All reasonable presumptions will be entertained in favor of the verdict, while nothing will be presumed in aid of the special findings of fact. The inconsistency must be irreconcilable, so as to be incapable of being removed by any evidence admissible under the issues."

In Burke v. Bay City, etc., Co. (1907), 147 Mich, 172, 110 N. N. 524, the court said:

"If such ambiguous questions are submitted—and the trial court might very properly refuse to submit them—they should be construed as the jury understood them. Otherwise their answer is not given the effect that the jury intended. By what means shall we ascertain the understanding of the jury? The party who propounds such questions—in this case, the defendant—is responsible for their ambiguous character, and all serious doubts should be resolved against him. Under such circumstances it should be presumed that the jury placed that construction upon the question which makes their answer thereto harmonious with their general verdict and with their answers to the other special questions. Any other rule would give an unfair advantage to the party asking ambiguous questions and encourage him to persist in an improper practice."

See, also, Bennelli v. A. T. & S. F. Ry. Co. (1926), 120 Kan. 237, 243 P. 1004; Hawthorne v. Travelers, etc., Association (1922), 112 Kan. 356, 210 P. 1086, 29 A. L. R. 494.

This court had occasion to consider this matter to some degree in a former case, and held that, "giving to the language of the special finding and charge its ordinary meaning," there was no conflict between the special finding and the general verdict. Zimmerman v. South Dakota Central Ry. (1911), 28 S. D. 300, 133 N. W. 258.

It is, therefore, in the light of these legal principles thus uniformly established by the decisions, that we must consider the claimed inconsistency between the general verdict and the answers to the second and third interrogatories.

For convenience we here repeat the third interrogatory. It was as follows: "Has there been sufficient money advanced by

plaintiff C. R. Benedict or H. Benedict or any one for them, exclusive of the certificates of deposit, to fully pay the amount due on the feeding contracts referred to in the foregoing interrogatories?"

By answering this interrogatory in the negative the jury merely said, in substance, that all amounts payable according to the terms of the H. Benedict feeding contract to Youngquist (or to appellant since it is pleaded and admitted by all parties that the feeding contract, although in the name of Youngquist, was nevertheless by and for appellant bank) have not in fact been paid. We do not see how it can possibly be claimed that there is any inconsistency between this special finding and the general verdict, which general verdict held that there was no justification for applying the proceeds of certificates of deposit issued to respondent upon amounts due under the H. Benedict feeding contract. Of course, money of respondent could not in any event be applied on the H. Benedict contract unless there was something due upon the same, but manifestly a mere finding that there was something due upon the H. Benedict contract is perfectly consistent with the general verdict to the effect that appellant could not justifiably use the proceeds of respondent's certificate to pay the amounts so due on the H. Benedict contract. It seems quite clear that respondent's certificates of deposit could not be used against his will to pay the debt of H. Benedict on the feeding contract unless said certificates of deposit were in fact the property of H. Benedict, although issued in the name of respondent, or unless respondent had entered into a binding agreement that the certificates might be so used, or unless respondent had so conducted himself as to be estopped from objecting to the certificates being so used. The court presented these propositions fully and completely to the jury under the following instructions, among others, to which no exceptions were taken by either party:

"The only defense raised by the pleadings is defendant's claim that the defendant acting through E. V. Youngquist as its agent entered into certain feeding contracts set out in the pleadings and in evidence here as Exhibits '9' and '10,' and entered into a verbal contract by which the plaintiff was to advance the money represented by certificates of deposit, and that when the time for payment of the amount due under the feeding contract plaintiff agreed

that he would surrender the certificates of deposit and that the money due thereon should apply in payment of the feeding contract and for expenses in feeding the cattle.

"This claim of the defendant is denied by the plaintiff.

"Now under this issue, of course, the plaintiff would be entitled to recover the full amount of $6,150.00 unless the defendant shows by a preponderance of the evidence that the plaintiff made such an agreement, and also that there has not been payment made upon the said feeding contracts sufficient to pay the amount due for feeding the cattle. * * *

"The Court charges the jury that a contract is not good unless based upon a consideration; that is, a benefit conferred or agreed to be conferred as an inducement for the thing done.

"As applied to this case, C. R. Benedict could not be held bound to surrender certificates of deposit and apply the amount of them on feeding contracts of H. Benedict unless there was something of value to him or some benefit conferred upon him by the defendant unless you find that the plaintiff knowingly permitted the defendant to continue to expend money for feeding of the cattle after a promise without apprising it or giving it notice that he did not propose to be bound by such promise, if you find he made it and if you find the defendant, relying on such promise, did expend money for feeding the cattle.

"Of course, if you find there was no consideration running to C. R. Benedict, and that he did not knowingly permit the defendant to continue to expend money for feeding cattle because of a promise, you should find for the plaintiff.

"If you find there was such an agreement and a consideration for it, and if he made such an agreement and knowingly permitted the defendant to expend money on a feeding contract after such an agreement without apprising the defendant, he would be bound by it and such a contract would be binding and the defendant should recover, unless you find enough advances have been made aside from the certificates to pay for the feeding contracts referred to."

By the general verdict the jury has said that appellant failed to convince the minds of the jurors of the existence of any facts which, under the law of the case as propounded by the instructions of the court, would be justification for applying the certificates issued to respondent to the payment of H. Benedict's feeding con-

tract debt. Certainly it is perfectly consistent with this general verdict for the jury to say in response to a special interrogatory that neither H. Benedict nor any one else had yet paid that debt, although a finding of the existence of that debt became entirely immaterial in the light of the finding implicit in the general verdict under the court's instructions that appellant could not apply the certificates issued to respondent to the payment of such debt even though the debt did exist.

We turn, then, to consider the claimed inconsistency between the general verdict and the affirmative answer to the second interrogatory, the language of which we here repeat as follows:

"Did the Carter State Bank furnish expense money for feeding the cattle under the contracts mentioned in Interrogatory No. 1 and did it furnish it believing that the certificates of deposit were to be surrendered to the bank and that the amount due plaintiff should be applied on the feeding contracts referred to in Interrogatory No. 1?"

Here likewise we are unable to see any inconsistency between the fact specially found by the affirmative answer to this interrogatory and the general verdict, particularly in the light of the clear rule of law that no presumptions will be indulged in favor of inconsistency, and that, as stated by the California court: "* * * We do not think the court should strain the language of a finding to make out a case of conflict. The finding should be reconciled if it can be reasonably done, and be so construed ut res magis valeat quam pereat." Alhambra, etc., Co. v. Richardson (1887) 72 Cal. 598, 14 P. 379.

It is to be observed that appellant bank was no stranger to the H. Benedict contract. In fact, it may properly be said upon the pleadings and admissions in the case that appellant was really the second party to such contract, although Youngquist, the president of appellant, was named as second party therein. The contract recited that H. Benedict, the first party, "* * * has this day delivered to the party of the second part, two hundred twenty-one head of steers of a total weight of 216,150 lbs. which cattle party of the second part agrees to put on full feed of corn and hay from this date. * * *"

Under this contract it was a duty of the appellant to furnish the corn and hay for feed. It seems to be admitted that by subse-

quent or contemporaneous parol agreement it was mutually understood that H. Benedict should advance at least some money to be used in buying feed for the performance of this contract and that he did from time to time advance some money for that purpose, evidenced by promissory notes, but the record does not show any agreement as to the exact amounts to be so advanced, and certainly under the contract it was the primary duty of appellant (Youngquist being admitted to be acting for appellant) to furnish the feed. And when appellant bought feed to enable it to perform its contract with H. Benedict, appellant could hardly be said, in the light of the terms of that contract, in any proper sense of the words, to "furnish expense money for feeding the cattle."

Passing that point, however, the substance of the second special finding is that appellant did in fact spend money for feed to be used in performance of the H. Benedict contract (whether such conduct was or was not "furnishing expense money"), and that it used this money "believing" that respondent's certificates would be surrendered and the proceeds thereof applied in settlement of the H. Benedict feeding contract. Appellant's argument as to inconsistency in this particular connection is set out in the brief as follows:

"The jury has said that the Carter State Bank furnished expense money for feeding the cattle, believing that the certificates of deposit representing that money were to be surrenedered to the bank and the amount due the plaintiff should be applied in payment of the feeding contracts. The jury has said that the defendant, Carter State Bank, had that belief. It could only have had a belief founded upon reason or it would have had no actual belief. E. V. Youngquist was the only person known to the bank that had anything to do with the transaction. There could be only one basis for the formation of such belief by the bank and that would be the promise to or agreement with E. V. Youngquist by C. R. Benedict, the only person who had anything to do with this transaction on the other side. Therefore the belief of the bank, which the jury found existed, must have rested upon such a promise or agreement. And yet the jury, by its answer to Interrogatory No. 1, says there was no such promise or agreement."

With this contention we are entirely unable to agree. The fallacy of the argument lies in the entirely unjustifiable assumption

that the single word "believing," in and of itself, must necessarily be held to mean a reasonable belief resting upon a promise or agreement of respondent, and cannot be interpreted to mean anything else.

In the common and ordinary use of language and in the general acceptation of the term the word "believing" refers primarily and explicitly to the mental state of the believer without any necessary regard to the reasons, conditions, or circumstances which may have caused or influenced the existence of such mental state. The connotation of the word is entirely subjective. What a man believes, he believes, and the existence or even the sincerity of a belief have no necessary connection with the nature or accuracy of the data upon which it is based or the validity of the mental processes by which it came into existence. The word is frequently, and probably generally, used as similar in connotation to faith, hope, trust, confidence, or expectation. A man arrives at belief, generally speaking, by applying his mental processes to certain data and coming to the conclusion that the inferences from such data justify the belief. Thereupon we describe the mental state of that man regarding the particular matter as a condition of "believing," and his mental state is actually existent and the word "believing" is properly descriptive of it, regardless of the fact that he may have arrived at his belief by illogical and even extremely unreasonable inferences from insufficient data, and regardless of the fact that the ordinarily reasonable man would not have arrived at the same condition of believing by applying his mental processes to the same data. So, in the instant case the belief of appellant, however honest, sincere, and actually existent, was utterly immaterial unless it was reasonably based upon some conduct of respondent, and the word "believing," standing alone, carries no implication of such basis.

The interrogatory, therefore in the form in which it was presented and answered, went to an immaterial matter and should not have been submitted to the jury. The jury by its general verdict and by its answer to the first interrogatory found specifically and in substance that respondent did not do or say anything which would justify a reasonable belief that he would consent or agree to the application of the proceeds of the certificates issued to him upon the debt of H. Benedict. It may nevertheless be perfectly true that

appellant honestly and sincerely entertained the opinion that such certificates would be surrendered to the bank and applied upon the feeding contract when the time for settling the thing arrived. This is explained upon a number of different hypotheses. It may have been an unreasonable belief. It may have been arrived at from entirely insufficient foundations. The jury may have been of the opinion that the bank honestly, although without any justification thereto so far as concerns respondent, believed that, when the time came to settle up the H. Benedict feeding contract, respondent would, if so requested, consent to the application of these particular certificates upon that contract. Respondent and H. Benedict were brothers, and all the parties seem to have been entirely friendly, and the appellant perhaps assumed that it would be entirely possible to make such an arrangement at the settlement date. Any of these hypotheses would not only justify but require an affirmative answer to the second interrogatory; but upon none of them is such answer in conflict with the general verdict or the answer to the first interrogatory.

It seems to us very clear under the settled rule of law that we cannot say that this affirmative answer to the third interrogatory is irreconcilably inconsistent with the general verdict. In fact, it seems to us that, to establish any inconsistency between this answer and the general verdict, it would be necessary to make or assume a very palpable addition to the interrogatory as phrased by inserting after the word "believing" the phrase, "in reasonable reliance upon some promise or conduct of C. R. Benedict," or the equivalent thereof. If appellant desired that idea covered by the answer to this interrogatory it was the duty of appellant to see that the language of the interrogatory in accordance with the ordinary usage of words clearly embraced the idea. This appellant did not do, and we can indulge in no speculation as to how the jury may have arrived at their answer to the interrogatory as it was actually presented to them, or as to how the interrogatory would have been answered by the jury if that idea of the responsibility of respondent for appellant's belief had been clearly or by any necessary implication contained therein.

Being of the view that appellant has failed to show prejudicial error, the judgment and order appealed from must be and they are affirmed.

MISER, C., sitting as judge in lieu of SHERWOOD, J.

BURCH, P. J., and BROWN and MISER, JJ., concur.

POLLEY, J. (dissenting).  I think the answer to the second interrogatory and the general verdict are so irreconcilably inconsistent that both cannot stand, and that for that reason the verdict should be set aside and a new trial granted.