CENTRAL LOAN & INVESTMENT CO., Appellant, v. LOISEAU, Respondent.

(239 N. W. 487.)

(File No. 7115. Opinion filed December 1, 1931.)

*Howard L. Bump,* of Des Moines, Iowa, and *Danforth & Davenport,* of Sioux Falls, for Appellant.

*Krause & Krause* and *Ervin P. VanBuren,* all of Dell Rapids, for Respondent.

CAMPBELL, J. In this case we hear yet another rattling of bones from the grave of the defunct Midland Packing Company. This corporation was formed some fifteen years ago for the avowed purpose of constructing and operating a packing plant at Sioux City, Iowa, and matters arising as the aftermath of its "high pressure" stock selling campaign have been frequently before this court.

See, among others, State Bank of Alcester v. 'Weeks, 45 S. D. 639, 189 N. W. 941; Id., 46 S. D. 93, 190 N. W. 806; Id., 53 S. D. 260, 220 N. W. 502; Security State Bank v. Weeks, 46 S. D. 363, 193 N. W. 60; Jerke v. Delmont State Bank, 51 S. D. 623, 216 N. W. 362; Id., 54 S. D. 446, 223 N. W. 585, 72 A. L. R. 7; Security Holding Co. v. Christensen, 53 S. D. 37, 219 N. W. 949, 60 A. L. R. 1173; Security Holding Co. v. Johnson, 57 S. D. 163, 231 N. W. 536.

Defendant Loiseau is a farmer residing in Moody county, S. D. On February 21, 1919, and March 28, 1919, Loiseau signed two subscription contracts for capital stock of Midland Packing Company at the par value of $100 per share, which contracts were respectively for the purchase of ten and twenty shares of said stock. In connection with said contracts for purchase of stock, defendant paid in cash (or Liberty bonds) the sum of $1,000, and, representing the balance of the purchase price, executed and delivered to the representatives of the Midland Packing Company his three promissory notes, one dated February 21, 1919, for $500, and two dated March 28, 1919, for $750, each payable to Midland Packing Company, and each due one year from date with interest at 6 per cent. The stock subscription contracts in connection with and pursuant to which said promissory notes were executed and delivered specifically provided, in part, as follows (italics ours) : "I * * * agree to pay therefor $100 per share payable as follows: Not less than one-fourth cash accompanying this application and the balance thereof as evidenced by my promissory note of this date with interest at six per cent. * * * *It is expressly agreed that no stock is to be issued until the amount of this subscription and note given therefor is paid in full in cash.* * * * This subscription contract contains the entire contract between the subscriber and the company. * * * " Defendant claims that these notes were secured from him by misrepresentation and fraud; but, under the circumstances of this case, the learned trial judge correctly ruled (cf. Muschelwicz v. Tidrick, 40 S. D. 435, 167 N. W. 499; First State Bank v. Gunderson, 54 S. D. 473, 223 N. W. 596) that fraud in the inception of said original notes was not available as a defense and struck out all evidence concerning the same.

Central Trust Company was an Iowa corporation with its principal office at Des Moines, where it was engaged in the general

investment banking business. During the year 1918, 1919, and 1920, Midland Packing Company was a heavy borrower from Central Trust Company, which borrowings were secured in large part by notes given to Midland Packing Company by various subscribers to its capital stock. The transactions between Midland Packing Company and Central Trust Company appear to have taken two forms. Sometimes there was an outright borrowing with an assignment and pledge of stock subscribers' notes as collateral security therefor. In other cases the form of the transaction was a rediscount of the stock subscribers' notes with an agreement on the part of the Midland Packing Company, either by indorsement or by separate written contract, to indemnify the indorsee in case of dishonor by the maker at maturity. Among the notes so held and taken by Central Trust Company were the three notes of the defendant Loiseau above described. Whether said notes were pledged by the Midland Packing Company as collateral security or were rediscounted with an indemnifying agreement does not definitely appear, nor is it material in this case. Whether by one device or the other, the notes were assigned, indorsed, and transferred to Central Trust Company for value and before maturity. The Loiseau notes were not paid at maturity (February 21 and March 28, 1920), and immediately thereafter (March 31, 1920, April 9, 1920) Central Trust Company was notifying Loiseau in writing of his default and pressing him for immediate payment.

The affairs of Midland Packing Company becoming more and more involved, on June 10, 1920, the District Court of the United States for the Northern District of Iowa, Western Division, at the suit of creditors, appointed receivers therefor. The claim of Central Trust Company against the packing company for moneys borrowed and for notes rediscounted under indemnity agreement was filed, allowed, and approved in the court of the receivership in the sum of $866,269.36 as of June 22, 1930.

On October 12, 1920, the receivers of the packing company petitioned the court of the receivership, reciting in part as follows:

"That as shown by the receivers' report, filed herein on the 27th day of August, 1920, a large number of negotiable promissory notes were executed by the various subscribers to the capital stock of the said Midland Packing Company in payment of their stock subscriptions between the time of the organization of said company

and the commencement of this action, wherein these receivers were appointed; that the said notes outstanding and unpaid, as shown by said report, aggregate three million dollars, or thereabouts, and that of said notes the sum of approximately Two Million Dollars are now in the hands of various banks and trust companies to whom the same were heretofore sold by the officers of the said Midland Packing Company, or pledged as collateral to secure money borrowed from said institutions from which moneys, including the direct payments on stock subscriptions, the plant of the said Packing Company was erected.

"That the larger part of said notes, whether discounted or pledged as collateral, have been guaranteed by the said Midland Packing Company, in some instances by blank indorsements thereon, and in others by separate instrument, whereby the said Midland Packing Company agreed to indemnify such indorsees in case of dishonor by the maker at maturity.

"That some of the said notes are past due and others bear early maturities, and there are no funds in the hands of the said receivers, and no moneys will become available except by a sale of the plant at great sacrifice with which to meet the obligations of the said Packing Company by virtue of such indorsements and guaranties.

"That some of the makers of the said notes are unable to meet the same when due, but are willing to renew and extend the same; and the holders of said notes are willing to grant such extensions as the circumstances of such note makers may require, provided they may do so without releasing their respective claims against the Midland Packing Company by virtue of such indorsements and guaranties.

"That it is to the best interests of the said Packing Company and the stockholders thereof and all concerned that renewals and extensions of said negotiable paper should be permitted to be made by the said note holders to such reasonable times as the said note makers shall be able to meet the said obligations; and that these receivers be authorized, directed and empowered to enter into agreements with the said note holders permitting the said extensions to be made, and providing therein that the said note holders shall not thereby waive their respective claims against the said Midland

Packing Company on account of any indorsement or guaranty of the said Midland Packing Company thereon. * * *

"Wherefore your petitioners pray:

"1. That they be authorized, directed and empowered to enter into contracts with the several note holders above referred to permitting the extensions and renewals of any such subscription notes in their hands, respectively, to such reasonable times as may be required, without the said note holders waiving thereby their respective claims against the said Midland Packing Company on account of any indorsements or guaranties of the said paper and to the same effect as though such renewals and extensions had not been made."

On November 8, 1920, the court of the receivership entered its order upon said petition granting the receivers the power and authority which they had requested.

On December 8, 1920, defendant Loiseau executed and delivered to Central Trust Company two promissory notes dated on that day, one for $1,500 and one for $500, each due on or before December 8, 1921, with interest at 6 per cent until maturity and 8 per cent thereafter. There is also in the record an instrument bearing the same date as the notes in suit (December 8, 1920), the original instrument being denominated "Exhibit 3A" and a copy thereof being found also in "Exhibit 3," which is a duly exemplified copy of records from the office of the clerk of the United States District Court for the Northern District of Iowa in the Midland Packing Company receivership. This instrument purports upon its face to bear the signature of the defendant Loiseau, and reads as follows:

"In the District Court of the United States,
for the Northern District of Iowa,
Western Division

"Peter J. Hegnes, Plaintiff, vs. Midland Packing Company, a Corporation, Defendant. Application for Extension of Note.

"To Said Court and the Honorable J. D. Elliott, Judge Thereof:

"The undersigned respectfully alleges and states:

"That he is a subscriber to the capital stock of the Midland Packing Company, a corporation of Sioux City, Iowa, having subscribed for 30 shares of the par value of One Hundred Dollars

each, for which he agreed to pay One Hundred Dollars per share, and that to evidence the payment thereof he executed promissory notes aggregating the principal sum of Two Thousand Dollars now outstanding and unpaid.

"That he is not financially able to receive and pay for the said stock and to meet the said indebtedness above mentioned at this time, but that he is willing and able to pay for the same if said subscription notes are extended, and as evidence of such extension he has executed his negotiable promissory notes payable to .Central Trust Co. of DM for the sum of Two Thousand Dollars, due 12/8, 1921.

"Your petitioner further alleges and states that in consideration of the report of the Receivers of said Midland Packing Company filed herein on the 27th day of August, 1920, showing the financial condition of the said corporation, he believes it to be. equitable and just to the stockholders who have paid their subscriptions in full that the outstanding subscription notes should as far as possible be collected and paid and the valid indebtedness of the said corporation be liquidated therefrom; and in consideration of the premises said petitioner respectfully prays that the said Receivers be authorized to extend his said subscription note * * * as aforesaid, and that such extension and the payment herein provided for be approved by said Court.

"Dated at Dell Rapids, S. D., this 8th day of Dec. 1920.

"[Signed] A. A. Loiseau

"Approved this 27th day of Dec., 1920.

"H. G. McMillan
"J. A. Johnson
"Receivers."

The above document is certified by the clerk of the court to which it is addressed as having been filed in his office in the receivership action on February 11, 1922, and on February 11, 1922, the court of the receivership made and entered the following order:

"An order having heretofore been made on the 8th day of November, 1920, authorizing the renewal and extension of any and all promissory notes executed by the several subscribers to the capital stock of said above named defendant, then in the hands of holders in due course, and authorizing the receiver to agree with

such extensions without thereby releasing any liability of the said defendant on account of any outstanding endorsement or guaranty of the said paper, which said order likewise directed the renewal and extension of such notes as were then in the hands of the said receiver as the property of the said packing plant; and it now being made to appear to the court that pursuant to the said order large numbers of the said stockholders who were makers of promissory notes referred to in the said order, have, by agreement with the holders of the said notes adjusted and settled their respective controversies, if any, arising out of said stock subscriptions and the execution of the said notes respectively, and pursuant thereto have presented to this court and filed herein their respective petitions asking that such notes be extended to the times respectively set forth in said petitions; and the matter of the said applications for extension now coming on for approval before the court:

"On motion of C. M. Stillwell, attorney for the receiver,

"It is hereby ordered that each and every of the said petitions be and the same are hereby confirmed, allowed and approved, and the acts and doings of said note makers and of the said receiver and the said note holders and each and every of them in and about the said renewal and extension of the said notes, and petitions be and they are hereby confirmed and approved.

"The said petitions respectively have been presented to the court and are directed to be filed herein, and for convenience a list of the said petitioners containing the names of the respective note makers with their respective places of residence, amount of note and maturity thereof respectively are hereto attached and made part of this order to the same purpose and effect as though a separate order were made approving each of the said petitions.

"Dated this 11th day of February, 1922.

"By the Court:

"Jas. D. Elliott,

. District Judge.

"Filed Feb. 11, 1922. Entered Eq. O. B. pg. 187."

In the list attached to said order, under the heading "Central Trust Company, Des Moines," appears the name "A. A. Loiseau," address "Dell Rapids, S. D.," amount of note "$2,000," date due "12/8/1921."

July 29, 1926, by proceedings in the district court of Polk county, Iowa, L. A. Andrew, superintendent of banking of the state of Iowa, was appointed receiver of Central Trust Company for the purpose of liquidating and winding up its affairs. November 30, 1927, L. A. Andrew as such receiver of the Central Trust Company instituted the present action against the defendant to recover upon the two promissory notes executed and delivered by said defendant in the aggregate sum of $2,000, payable to the Central Trust Company, bearing date December 8, 1920, hereinabove described.

The case came on for trial and resulted in a directed verdict for the plaintiff, but thereafter and on February 28, 1929, defendant, upon his motion, was granted a new trial. The case came on for a second trial in the circuit court on December 9, 1929. Meantime, Central Loan & Investment Company, a corporation, had been duly organized under the laws of the state of Iowa, had discharged the debts and obligations of the Central Trust Company and had duly taken over from L. A. Andrew, superintendent of banks, as receiver of said Central Trust Company, pursuant to order of court, all assets in his hands, and the said L. A. Andrew as receiver, with the approval of the court, had specifically assigned and transferred to Central Loan & Investment Company the present cause of action against the defendant Loiseau and the notes whereon the same is based, and at the beginning of the second trial upon due application and without opposition Central Loan & Investment Company was substituted as party plaintiff in place of L. A. Andrew, receiver, and the trial proceeded in the usual course. Plaintiff moved for a directed verdict at the close of all the testimony, which motion was denied. Thereafter the following stipulation was entered into between counsel in open court and made a part of the record: "It is agreed by and between Counsel for the plaintiff and counsel for the defendant relative to the instructions in this matter, that the case may be submitted to the Jury upon the requested special interrogatories submitted by either party and upon general instructions covering the said special interrogatories as to the law and a general jury verdict is hereby waived."

Pursuant to such stipulation the only matter submitted to the jury was the answering of six specific interrogatories, as follows:

"A-1. Do you find that the signature 'A. A. Loiseau' on Exhibit '3-a' is his own signature? Answer either yes or no.

"B-1. Did those two men at Mr. Loiseau's farm home on December 8th, 1920, state to this defendant that the Central Trust Company had taken over from the Midland Packing Company the three notes, one for $500.00 and two for $750.00 each, amounting to two thousand dollars and that because the defendant had failed to pay those notes when due the Packing Company had issued and delivered to said Central Trust Company a certificate for thirty shares of its capital stock that the defendant had subscribed for, and that the Central Trust Company then owned said thirty shares? Answer yes or no.

"B-2. If you answer yes to the above question B-1, then also answer the following question: Did those two men at that time and in that connection also state to the defendant that the Central Trust Company had directed them to sell its said thirty shares of capital stock to the defendant? Answer yes or no.

"B-3. If you answer yes to each of the foregoing questions B-1 to B-2, then answer this question: Did the defendant believe the statements of those two men, set out in said questions, B-1 and B-2? Answer yes or no.

"C-1. Also answer the following question: Did those two men at that time also state to the defendant that if he would sign the two notes upon which this suit is based (Exhibits '1' and '2') that the Central Trust Company would procure the Midland Packing Company to issue and deliver to this defendant its certificate of thirty shares of its capital stock and would therewith surrender his three past due notes, and that the two notes which they asked this defendant to sign should not be nor become his notes or binding obligations unless and until the Central Trust Company had procured the issuance and delivery to the defendant of such stock certificates and the return to him of his said three past due notes? Answer yes or no.

"C-2. If you answer yes to the question C-1, then also answer the following question: Did the defendant believe and rely upon the propositions and statements set out in the question C-1, and was he induced thereby and by the condition therein stated to sign the two notes herein sued upon? Answer yes or no."

The jury, as a result of its deliberations, answered each of the questions submitted to them by the word "yes." Thereafter plaintiff presented to the court an application which it denominated "Motion for Judgment on Special Verdict," wherein it took the position that the answer to the first question submitted, whereby the jury found that defendant had signed the petition to the federal court, Exhibit 3A, constituted a special verdict in favor of plaintiff, and authorized judgment in favor of plaintiff. At the same time and subject to the ruling of the court upon the motion last above mentioned, plaintiff moved the court to grant judgment in favor of plaintiff and against defendant "notwithstanding the answer by the jury to the special interrogatories numbered B-1, B-2, B-3, C-1, and C-2." Both motions were denied, and thereafter the learned trial judge without making findings of fact or conclusions of law, and upon no other basis than the interrogatories answered by the jury, entered judgment for the defendant from which judgment and from a denial of its motion for new trial plaintiff has now appealed.

A motion by respondent to dismiss the appeal was denied (same title, 58 S. D. 88, 235 N. W. 105). Thereafter, upon application duly made and upon payment of terms in the sum of $51.10, appellant was granted leave to withdraw its brief and file in lieu thereof an amended and substituted brief, which was done, and a new brief thereafter filed by respondent, and the matter has been submitted and is now before us on the merits. Respondent, deeming appellant's statement as to the contents of the settled record to be imperfect or unfair, inserted in his brief further and additional statements concerning the same. Appellant, not conceding the correctness of respondent's statement, has filed a reply brief wherein it calls attention to the particulars in which it claims respondent's statement to be inaccurate, and pursuant to rule 7 of this court has caused the settled record to be sent up, and the same is before us.

Respondent urges at great and repetitive length, with much quibbling and overrefinement of argument, that the record is not properly settled and certified; and in much detail that appellant's several assignments of error are insufficient in form and substance. Few, if any, of these points are sufficiently well taken to be deserving of any serious consideration. To state and rule upon them

separately would mean merely the restatement of a considerable amount of elementary and unquestioned procedural law, and the pointing out of the application thereof, and would prolong this opinion unduly without being of any particular value to anyone. We therefore dispose of all of these points by saying that while respondent may be technically correct in his objections to some of the assignments, nevertheless it is entirely clear that the record is duly and properly settled and certified, and all assignments to which any valid objection could possibly be urged may be utterly disregarded and yet there remain assignments of unquestionable validity entirely sufficient in form and substance fully to present all questions necessary of consideration for the determination of this appeal.

Coming then to the actual merits, we may conveniently organize our discussion of the case under four headings to be taken up in the order named as follows: First, the fact contentions between the parties. Second, questions of law in controversy between the parties. Third, the legal effect of the manner of submission of questions to the jury. Fourth, the disposition that should now be made of the cause.

Whatever issues of fact may have been presented by the pleadings, when the testimony closed not many matters of fact were open to question upon the record. It was clear that appellant, as successor in interest to Central Trust Company, held the notes sued upon, whether by pledge or rediscount with indemnity agreement, as security for the repayment of money advanced to Midland Packing Company and not repaid, the past-due balance of which amounted at the time of the trial of this case to more than $600,000. Appellant's right to recover upon the notes was plain unless respondent should be able to establish some defense thereto other than appellant's lack of title or authority to collect. It was clear that the notes sued upon related back for origin to the original notes given by respondent to Midland Packing Company in 1919. It was clear that appellant had succeeded to all rights of Central Trust Company in the matter. It was clear that the notes sued upon were executed and delivered by respondent to Central Trust Company on or about December 8, 1920, and at a time when Central Trust Company held the original Midland Packing Company notes and was pressing respondent for payment thereon, and at a time when respondent was chargeable with knowledge of any

fraud that might have been practiced upon him in the procurement of the original packing company notes. Respondent himself testified that he understood at the time of signing the notes sued upon that they were renewals of his original notes to the packing company. It is clear that there was thereafter presented to the court of the receivership of the packing company a petition, hereinbefore set out at length, purporting to be signed by respondent, bearing the same date as the notes sued upon, referring to the notes sued upon representing respondent's willingness and ability to pay his original notes to the packing company if an extension of time is granted, representing that he has executed the notes sued upon as evidence of such extension, and praying that the extension thus evidenced be approved by the court. It is undisputed that the execution of such extension or renewal notes was thereafter approved and allowed by the court of the receivership by order duly entered. This brings us to the real fact issue. Appellant contends that the signature on the petition to the federal court is in fact the signature of respondent. That respondent signed said petition addressed to the federal court and caused or permitted the same to be filed and acted upon in said court, and that the notes sued upon were executed and delivered pursuant and according to the terms of said petition, and as therein stated, and not otherwise. Respondent utterly repudiates the petition to the federal court purporting to bear his signature, the original of which is in the record denominated Exhibit 3A. Respondent does not say that he was induced to sign Exhibit 3A by fraudulent representations, that he signed it without knowing the contents thereof, or that he does not remember having signed it. He says that no such instrument was ever shown to or discussed with him by any one at any time until Exhibit 3A was presented in court at the trial; that he never saw the document before nor any like it, and never signed it nor any like it; and that the signature thereon is not his signature. Respondent admits receiving from Central Trust Company in the spring of 1920 written demands for the payment of his original notes given to the packing company. His story with reference to the notes sued upon, however, is that thereafter, and on or about December 8, 1920, two men, whom he never saw before and whose names he did not know and who did not present or exhibit to him his original notes to the packing company, called upon him at his

farm home; that these strangers told him they were representing the Central Trust Company, which had taken over a large amount of Midland Packing Company notes, including his; that a certificate for the thirty shares of packing company stock for which respondent had subscribed had been issued to Central Trust Company instead of to respondent for the reason that respondent had not paid his past-due notes; that the Central Trust Company had investigated respondent and wanted men of his type for stockholders; that the packing company was in full operation, paying more money for live stock than other packing companies, and that if respondent would sign new notes they would see to it that respondent received thirty shares of stock in the Midland Packing Company which was worth $110 on the Chicago market; that they would send respondent the certificate for thirty shares of stock and would return to respondent his three notes originally given to Midland Packing Company; that respondent believed such representations, and that the two strangers further stated to respondent, and respondent believed, that the notes he was then requested to sign would not be in any manner binding or in force until he received a certificate for thirty shares of stock of the packing company and the return of his original notes; and that respondent executed and delivered the same upon such express conditions precedent. He states that nothing was said about any petition to any court and that no litigation was mentioned; that he signed the two notes sued upon with a fountain pen handed to him by one of the strangers, and gave the notes to them; that he signed only the two documents, the notes; that the blanks in the printed note forms were not filled in in his handwriting, save only the signatures thereto, and he believes the initials canceling the revenue stamps thereon; that he does not remember whether the note forms were already filled in when the men arrived or whether this was done by one of the strangers in his presence; that the signature on Exhibit 3A is not his signature. These are the substance of the facts seriously in dispute between the parties, and these represent the fact questions which were submitted to the jury by special interrogatories.

The jury found in answer to the first interrogatory that the signature to Exhibit 3A was in fact the signature of respondent. It is not conceivable that they could have answered this question otherwise. Several witnesses who sufficiently qualified themselves

to give an opinion as to handwriting testified that it was, in their opinion, respondent's signature. A comparison of the signature to Exhibit 3A' with sample signatures made by respondent at the trial convincingly demonstrates that they were made by the same hand. Comparison of the signature on Exhibit 3A with the signatures on the notes sued upon (which respondent admits to be his, and which appellant contends were made at the same time and place) is convincing that the three signatures were made by the same hand, with the same pen and the same ink. An inspection of Exhibit 3A and the two notes sued upon furnishes additional internal evidence of a most convincing character that all three documents were filled in as to the blank portions by the same hand, with the same pen and ink, and were signed by the respondent with the same pen and ink, and were written and signed at about the same time.

The jury, however, notwithstanding their answer to the first interrogatory, proceeded by their answers to the subsequent interrogatories to find in favor of respondent upon his version of the manner in which the notes sued upon were procured as to everything excepting his signature to Exhibit 3A. As before stated, they answered all six interrogatories by the word "yes." Appellant questions the sufficiency of the evidence to sustain the answers of the jury to the last five. There is support, of course, in the testimony of respondent himself, if believed. Respondent's testimony, however, is so palpably false in part, so entirely incredible in other parts, and as a whole so obviously "framed" to meet what respondent conceived to be the exigencies of the occasion, that it is little short of astonishing that the jury should be willing to accept it in any particular. The precise point, however, of the sufficiency of the evidence to sustain the answer to these last five special interrogatories, we think need not be determined, for we are of the opinion, as will be hereafter more fully set out, that the facts so found are not material to a decision of the case.

We come now to the second proposition, controverted questions of law at the close of the testimony. These are, of course, to some extent interwoven with the disputed fact questions. Appellant contended that respondent signed Exhibit 3A, and that is no longer open to challenge upon this record. Appellant contended that, in fact, no fraudulent representations were made to respond-

ent by any one (and particularly not by appellant's predecessor in interest or its agents) at the time he executed the notes sued upon; but that in any event, had such fraudulent representations been made, respondent should not now be permitted to avail himself thereof. Appellant urged estoppel by reason of respondent's execution of the petition to the federal court, and res judicata by reason of the order of the federal court approving and granting the prayer of respondent's petition. Respondent maintained that he did not sign Exhibit 3A (which has now been determined otherwise), but that even if he had signed it, he would not be thereby precluded from setting up as a defense his claim of conditional delivery of the notes sued upon. It is amply proved upon this record, and must now be accepted as a verity, that respondent did sign and deliver Exhibit 3A, the petition to the federal court for extension of time upon his notes to Midland Packing Company, describing therein the notes sued upon, and tendering the same as evidence of such request for extension. The question resolves itself then to this: Is appellant correct in its argument that respondent is thereby precluded from availing himself as a matter of defense of the fact (if it be a fact, which appellant does not concede, and which we think is more than doubtful upon the record) that the notes were not executed and delivered in the manner and for the purpose stated and represented to the court in Exhibit 3A, but were delivered upon an express condition precedent not referred to in Exhibit 3A, contrary to the terms thereof, and not yet performed? It is very plain, we think, that in the substance of this contention appellant is quite right. Whether the order of the federal court of February 11, 1922, approving and allowing respondent's prayer for extension predicated upon his stated willingness to pay the original notes if extension was granted, and upon his tender of the notes now in suit as extensions and renewals of said original notes, amounts to a binding adjudication between the parties sufficient in all respects to justify in strictness the invocation of the doctrine of res judicata, it is not necessary to determine. All the elements of estoppel exist. It must be accepted upon this record that respondent did sign the petition. The petition was approved by the receivers, presented to, acted upon, approved, and allowed by the court to whom it was addressed. The renewal notes therein referred to were delivered to appellant's

predecessor in interest. Pursuant to his representations so made, respondent was not further pressed for payment of the original notes, but obtained the extension which his petition asked. Respondent does not claim that appellant or appellant's predecessor in interest in any fashion deceived him into signing the petition. He says he never signed it and flatly denies that the signature thereon is his. It requires no citation of authority to say that, under these circumstances, respondent will not now be permitted to contradict, to the prejudice of appellant, the representations which respondent then made, by which respondent benefited, which were accepted and relied upon by the persons to whom they were addressed, and which then operated to the detriment of appellant. Cf. Eickelberg v. Soper, 1 S. D. 563, 47 N. W. 953. It therefore becomes immaterial whether or not the evidence supports the answer of the jury to the last five interrogatories. The jury having very properly answered the first interrogatory in the affirmative, the others should be disregarded. The facts therein found, even if they exist, are not available to the respondent as a defense under the circumstances of this case. Whether or not they do exist is therefore unimportant.

We come now to the third point, being the manner of submitting the case to the jury and the legal effect thereof.

 Issues of fact are made by the pleadings (section 2489, R. C. 1919), and any judgment entered after the trial of controverted facts must be supported in the record (in the absence of statutory waiver) by a determination of the facts. When the fact issues are properly triable by a jury (section 2492, R. C. 1919), the determination of the facts must be by a general or special verdict of the jury (section 2519, R. C. 1919). Such general verdict may be the result either of the jury's deliberation, as is the usual case, or in proper case may be by direction of the court. Cf. Benedict v. Carter State Bank, 54 S. D. 14, 222 N. W. 500. A jury verdict, the legal effect of which is advisory only, will not support a judgment. State v. Niewenhuis, 49 S. D. 181, 207 N. W. 77; Lansing v. Oaks, 51 S. D. 615, 216 N. W. 353; Vassilos v. Arnold, 52 S. D. 167, 216 N. W. 951; In re Okeson's Estate, 52 S. D. 387, 217 N. W. 676. Neither can a judgment be supported by the determination of the jury upon an isolated question of fact in answer to a special interrogatory without a general verdict. Cf. Evans v.

Heaton, 49 S. D. 587, 207 N. W. 659. If the issues of fact are triable by the court under the statute (section 2492, R. C. 1919), or if, although triable to a jury, the jury is waived (section 2524, R. C. 1919), or if the determination of the jury is advisory only (State v. Nieuwenhuis and accompanying cases cited supra), or if at the close of the testimony each party moves (without reservation of right to go to the jury in the event of denial of motion) for a directed verdict, and the court does not at that time direct a verdict for one party or the other (Benedict v. Carter State Bank, supra), the judgment must be supported by findings of fact and conclusions of law duly made and entered by the court (sections 2525, 2526, R. C. 1919), unless findings are waived in the manner provided by section 2527, R. C. 1919.

Sections 2492, 2519 and 2520, R. C. 1919, are respectively as follows:

"*Issues, by Whom Tried.* An issue of law must be tried by the court or by the judge. An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived as provided in section 2524. Every other issue is triable by the court which, however, may order the whole issue or any specific question of fact involved therein, to be tried by a jury, or may refer it as provided in sections 2530 and 2531."

"*Verdict General or Special.* The verdict of a jury is either:

"1. A general verdict, by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; or,

"2. A special verdict, by which the jury finds the facts only, leaving the conclusions of law to the court.

"The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and these conclusions of fact must be so presented as that nothing shall remain for the court but to draw from them conclusions of law."

"*When Special Verdict Rendered.* In an action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them,

274

if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. The special verdict or finding must be filed with the clerk, and entered upon the minutes. Where a special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

It will be observed that by the provisions of section 2520 in cases which must be tried by a jury (as defined in section 2492) the jury "may render a general or special verdict." In such cases the special verdict of the jury, if a special verdict is returned, must come within the provision of section 2519 and must find all material facts in such fashion "that nothing shall remain for the court but to draw from them conclusions of law." In cases triable to the court the court may in its discretion submit all or any fact questions to a jury (section 2492), and in such cases "may direct the jury to find a special verdict in writing upon all or any of the issues" (section 2520), but the case being properly triable to the court, the determination of all or any fact issues by the jury will be advisory only. Section 2520 further provides that the court may "in all cases" instruct the jury "if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon." This is the portion of the statute that justifies in our practice the submission to the jury of what we commonly denominate "special interrogatories." As above set forth, where the case is properly a court case and a jury has been called in by the court in its discretion to act in an advisory capacity, a single fact issue may be submitted to the jury (whether in form called "special verdict" or "interrogatory") without anything else if the court sees fit. The determination of the jury thereon is of no binding force or effect and has nothing to do with the judgment which in such case must be supported, not by the determination of the jury, but by findings of the court, who may or may not accept and adopt the fact determination of the jury. In cases properly triable to a jury, however, it is the clear contemplation of our statute that the determination of the jury "upon particular questions of fact to be stated in writing" and the "written finding thereon" (customarily submitted by what we call special interrogatories) shall be made only "if they render a general verdict" and shall be in connection with a general verdict and if "a

special finding of fact is inconsistent with the general verdict, the former controls the latter." In a case properly triable to a jury the submission of special interrogatories without permitting a general verdict is anomalous and irregular. For the court so to do of its own motion is reversible error (Evans v. Heaton, 49 S. D. 587, 207 N. W. 659), and the practice is confusing and ought not to be indulged even upon stipulation of counsel.

In the instant case the answers of the jury to the questions submitted to them cannot be held to constitute a special verdict as defined by section 2519. The questions do not by any means go to all the material facts put in issue by the pleadings (though perhaps they cover the only fact questions which could be deemed open to controversy when the testimony was closed), and upon the pleadings and the answers to those questions, without more, no court could draw conclusions of law and enter judgment. Neither was the matter submitted to the jury as for a special verdict, nor did the stipulation of the parties (permitted and approved by the court) contemplate a special verdict. The stipulation was that the case "may be submitted to the jury upon the requested special interrogatories * * * and a general jury verdict is hereby waived." The question is as to the legal effect. We think that the stipulation entered into by counsel and the compliance therewith by the court amounted to a waiver of trial by jury as contemplated by section 2524, R. C. 1919, excepting that the parties reserved their legal right to have the jury determine the specific fact issues covered by the special interrogatories submitted to the jury. By such stipulation, in all other respects and particulars, the case became a court case. As to the particular questions submitted, the parties, being entitled as a matter of law to have all fact issues determined by the jury, did not waive their legal right to a jury trial. As to those matters under the circumstances here presented, the determination of the jury was not advisory but had the same force and effect as any determination of the jury in a case properly triable to the jury. We have therefore a situation which ought not to be permitted to arise as a matter of good practice, to wit, a case triable to a jury where some of the fact issues made by the pleadings are left to the jury but others, by stipulation, become questions for the judge to determine. The court should not have allowed the stipulation in such form, and should

not have acted thereon. It was done, however, and we think the legal effect thereof must be held to be as we have stated.

■ ■ It was therefore the duty of the trial judge to accept the answers of the jury to the fact questions submitted to it, and upon all other material issues to make findings of fact exactly as though the whole case had been tried to the court; and upon all such findings of fact (including those made by the court of its own motion and those accepted by the court from the answers of the jury to the special interrogatories) to make conclusions of law and enter judgment. Findings of fact upon all the issues other than those specifically found by the jury being necessary under the circumstances of this case to support the rendition of any judgment, the matter was jurisdictional; findings not having been waived in the manner provided by section 2527, R. C. 1919.

We turn then to the proper disposition of the case. The finding of the jury in answer to the special interrogatory that respondent in fact signed the petition to the federal court is unimpeachable upon this record. By virtue of that fact, the answers of the jury to the other fact questions submitted to them, whether sufficiently supported by the evidence or not, become entirely immaterial. The case has been twice tried, and there is no reason to believe that a third trial would further enlighten the court or be of advantage to any one. Cf. Vassilos v. Arnold, 52 S. D. 167, 216 N. W. 951.

The judgment appealed from is therefore reversed, and the cause is remanded, with directions to the trial court to make findings of fact upon all material issues (adopting and including as one of such findings the finding of the jury in answer to the special interrogatory denominated in the record as "A-1," whereby the jury found that respondent signed the petition to the federal court), and upon all such findings to make and enter conclusions of law (being guided therein by the holding of this opinion as to the immateriality of other facts found by the jury), and upon such findings of fact and conclusions of law to make and enter judgment accordingly. All this to be done upon the present record without new trial or other proceedings below.

WARREN and RUDOLPH, JJ., disqualified and not participating.

POLLEY, P. J., and ROBERTS, J., concur.